UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| DERRICK STEVEN PETERSEN,<br><br>Plaintiff,<br><br>vs.<br><br>HUNTER MEDBOURN, Police Officer at Vermillion Police Department, individual capacity,<br><br>Defendant. | 4:25-CV-04152-ECS<br><br>OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

Plaintiff, Derrick Steven Petersen, filed a pro se civil rights lawsuit arising out of his confinement at the Clay County Jail in Vermillion, South Dakota. Doc. 1. This Court granted Petersen's motion for leave to proceed in forma pauperis and screened his complaint in accordance with 28 U.S.C. § 1915A. Doc. 5. Petersen's Fourth Amendment and Fourteenth Amendment excessive force claims against Hunter Medbourn, in his individual capacity, survived screening. Id. at 9. Medbourn moves for summary judgment. Doc. 48. Petersen submitted a response to Medbourn's motion for summary judgment. Doc. 57. After Medbourn filed his reply brief, Doc. 58, Petersen submitted a further response that he entitled "Derrick Petersen's Reply Brief to Hunter Medbourn's Motion for Summary Judgment and for Qualified Immunity." Doc. 59 (capitalization in original omitted). Petersen's "reply" brief is properly characterized as a surreply, but Petersen did not request leave of court to file a surreply. There is no provision in the Federal Rules of Civil Procedure or the District of South Dakota's local rules that expressly authorize the filing of a surreply. Counts v. Wasko, No. 4:23-CV-04103-KES, 2024 WL 4068651, at *3 (D.S.D. Sep. 5, 2024). A party must seek permission to file a surreply.

Id.; Soliman v. Johanns, 412 F.3d 920, 922 (8th Cir. 2005). But the Court has discretion whether to accept a surreply. Postawko v. Mo. Dep't of Corrs., 910 F.3d 1030, 1037 n.3 (8th Cir. 2018). Because Medbourn did not object to or move to strike Petersen's surreply, Doc. 59, the Court will consider the arguments raised in his surreply.

## I. Petersen's Motion to Reopen Discovery (Doc. 73)

After Medbourn's motion for summary judgment was fully briefed, Petersen filed two motions requesting that the Court issue subpoenas requiring a Clay County Jailer, who is not a named defendant, to appear for a deposition. Doc. 63; Doc. 65. After Medbourn was served and answered Petersen's complaint, the Court entered a Rule 16 Scheduling Order. Doc. 16. Paragraph 3 of the Scheduling Order provides that "[a]ll discovery, including expert discovery, must be commenced in time to be completed by January 12, 2026." Id. ¶ 3 (emphasis in original omitted). Petersen's motions for subpoenas, Docs. 63, 65, were filed more than six months after the expiration of the discovery deadline, and more than four months after Petersen's response to Medbourn's motion for summary judgment was due. See D.S.D. Civ. LR 7.1(B) (providing that "[o]n or before 21 calendar days after service of a motion and brief . . . all opposing parties must serve and file a responsive brief containing opposing legal arguments and authorities in support thereof."). Petersen's motions did not indicate that there is any reason that the subpoenas he requests could not have been requested prior to the expiration of the discovery deadline and prior to the expiration of his time to respond to Medbourn's motion for summary judgment. Accordingly, by order dated August 31, 2026, this Court granted Medbourn's motion for stay and protective order and denied Petersen's motions for subpoenas. Doc. 70.

Petersen seeks to reopen discovery based on "[g]ood cause and excusable neglect[,]" but Petersen's motion does not include any facts demonstrating good cause or excusable neglect.

See generally Doc. 73. As the Court has previously stated, none of Petersen's untimely filings related to discovery provide any reason that he could not have made the requests prior to the expiration of the discovery deadline and prior to the expiration of his time to respond to Medbourn's motion for summary judgment. Petersen's motion to reopen discovery, Doc. 73, is denied.

Along with his motion to reopen discovery, Petersen requests that the Court "accept all previous motions that [he] has filed with the court up to date[,] and that Medbourn "should also have to answer all [his] motions[.]" Docs. 73, 74. The Court liberally construes Petersen's request as a motion to reconsider the order, Doc. 70, granting Medbourn's motion for stay and protective order and denying Petersen's motions for subpoenas. Medbourn's motion for reconsideration is denied for the same reasons that his motion to reopen discovery is denied.

## II. Medbourn's Motion for Summary Judgment (Doc. 48)

### A. Factual Background

In accordance with D.S.D. Civ. LR 56.1(A), Medbourn filed a statement of undisputed material facts presenting each material fact "in a separate numbered statement with an appropriate citation to the record in the case." See Doc. 49. As the party opposing summary judgment, Petersen "must respond to each numbered paragraph in the moving party's statement of material facts with a separately numbered response and appropriate citations to the record." D.S.D. Civ. LR 56.1(B). "All material facts set forth in the movant's statement of material facts will be deemed to be admitted unless controverted by the opposing party's response to the moving party's statement of material facts." D.S.D. Civ. LR 56.1(D); see also Fed. R. Civ. P. 56(e)(2) (providing that the court can consider a fact undisputed when a party "fails to properly address another party's assertion of fact as required by Rule 56(c)"). This rule applies even

when the nonmoving party is proceeding pro se. Johnson v. Kaemingk, No. 4:17-CV-04043-LLP, 2020 WL 1441713, at *1 (D.S.D. Mar. 23, 2020) (deeming facts admitted where a pro se plaintiff filed an opposition to a motion for summary judgment but did not comply with D.S.D. Civ. LR 56.1(B)); Joe v. Walgreens Co/ILL, No. 4:09-CV-04144-RAL, 2010 WL 2595270, at *1 (D.S.D. June 23, 2010) (deeming facts admitted where a pro se nonmoving party did not submit a statement of material facts or directly respond to the moving party's statement of material facts); see also Bunch v. Univ. of Ark. Bd. of Trs., 863 F.3d 1062, 1067 (8th Cir. 2017) (holding that a litigant's pro se status does not excuse him from following the district court's local rules). When the Court issued its Rule 16 Scheduling Order, Petersen was provided with a copy of Federal Rule of Civil Procedure 56 as well as the District of South Dakota's Civil Local Rules of Practice. Doc. 16 ¶ 5; Doc. 16-1. Nevertheless, Petersen did not timely respond to Medbourn's statement of undisputed material facts, Doc. 49, with separately numbered paragraphs and appropriate citations to the record, as required by D.S.D. Civ. LR 56.1(B). Accordingly, each paragraph in Medbourn's statement of undisputed material facts, Doc. 49, is deemed admitted pursuant to D.S.D. Civ. LR 56.1(D).

Petersen was in custody of the Clay County Jail on June 20, 2025. Doc. 49 ¶ 1. After Petersen was taken into custody, law enforcement obtained a search warrant to obtain a blood and urine sample from Petersen. Id. ¶ 2. According to the affidavit in support of the request for a search warrant, on June 19, 2025, Vermillion police officers responded to a report of an ongoing assault. Doc. 51-1 at 1. Upon arrival, the officers learned that Petersen had assaulted his father and girlfriend. Id. Both victims had severe injuries requiring hospitalization. Id. One of the victims notified the responding officers that Petersen had been ingesting methamphetamines. Id. Thus, the requesting officer sought a search warrant for a blood and

urine sample to determine whether Petersen had been under the influence of any illicit substances during the assault. Id.

On June 20, 2025, the affidavit requesting a search warrant to obtain a blood and urine sample from Petersen was presented to Jessica Bosse. Doc. 51 ¶ 3; Doc. 51-1. Bosse is a duly-appointed clerk magistrate under SDCL § 16-12C-1. Doc. 51 ¶ 2. As a clerk magistrate, Bosse is authorized to issue a search warrant under SDCL § 16-12C-7. Id. After receiving the affidavit, Bosse issued and signed a search warrant authorizing the collection of a blood and urine sample from Petersen. Id. ¶ 4; Doc. 51-2. Because Bosse was presented with a hard copy instead of an electronic copy of the affidavit requesting the search warrant, Bosse crossed out the last two lines of the warrant, which states "Grounds for the search warrant exist in the sworn communication set forth in the electronic affidavit submitted." Doc. 51 ¶ 6; Doc. 51-2 at 2. Bosse placed her initials immediately after the strikethrough along with the date. Id. Because the time initially noted at the end of Bosse's signature line was not correct, Bosse also wrote in the correct time next to her signature—"10:45 A.M." Doc. 51 ¶ 7; Doc. 51-2 at 2.

During the time period surrounding the blood draw, Vermillion Police Officers Hunter Medbourn, Mariah Koenig, and Jacob Hoffman wore body cameras. Doc. 49 ¶ 3. Copies of the videos from the body cameras of Officers Medbourn, Koenig, and Hoffman are part of the summary judgment record, and the Court has reviewed the body camera videos. Doc. 49 ¶ 3; Doc. 52 ¶ 4; Docs. 52-1, 52-2; Doc. 54 ¶ 4; Docs. 54-1, 54-2; Doc. 55 ¶ 4; Doc. 55-1. Clay County maintains surveillance cameras in the Clay County Jail. Doc. 49 ¶ 4. Copies of two surveillance camera videos capturing the blood draw are part of the summary judgment record, and the Court has reviewed each of these videos. Id.; Doc. 53 ¶ 4; Docs. 53-1, 53-2.

Hoffman presented the search warrant to Petersen and allowed Petersen to review it. Doc. 49 ¶ 5; Doc. 54 ¶ 5. Petersen repeatedly stated that he refused to voluntarily comply with the blood draw authorized by the search warrant. Id. After Petersen reviewed the search warrant, he was led back to his cell and barricaded himself inside. Doc. 49 ¶ 6. When officers accessed Petersen's cell, Petersen was verbally combative and resisted handcuffing. Id. ¶ 7. Officer Medbourn led Petersen from his cell to a restraint chair to facilitate the blood draw. Id. ¶ 8. Petersen did not physically resist while officers strapped his arms and legs into the restraint chair. Id. But while Petersen was being strapped into the restraint chair, he began making threats related to the blood draw, primarily directed toward the blood draw technician. Id. ¶ 9.[1]

After Petersen was secured in the restraint chair, Petersen thrashed his head and upper body toward the arm from which the technician had prepared to take a blood sample. Id. ¶ 10. When Petersen thrashed his head, he yelled "back up" and "I'm not letting anybody stick me." Id. Petersen then bit at the arm from which the technician had prepared to take blood. Id. ¶ 11. According to Medbourn's affidavit, he "restrained Petersen's head after [Petersen] thrashed his head and bit at the arm that the technician prepared for his blood draw." Doc. 55 ¶ 5. The video footage in the record corroborates Medbourn's affidavit. Docs. 52-2: 53-1; 53-2; 54-2; 55-1.

When Medbourn restrained Petersen's head, Petersen resisted and continued to thrash in the restraint chair. Doc. 49 ¶ 13. Petersen also yelled additional threats directed toward the technician. Id.[2] Medbourn ceased restraining Petersen's head when the technician completed the blood draw. Id. ¶ 14. Because of Petersen's continued resistance and thrashing, the blood

[1] Examples of Petersen's threats are set out verbatim in Medbourn's statement of undisputed material facts. Doc. 49 ¶ 9. Notably, Petersen does not dispute making any of these threats or contend that his threatening statements are misquoted.

[2] Some of these additional threats are set out verbatim in Medbourn's statement of undisputed facts. Doc. 49 ¶ 13. Again, Petersen does not dispute making any of these threats or contend that his threatening statements are misquoted.

draw lasted approximately two minutes and thirty seconds. Id. Per Medbourn's affidavit, he restrained Petersen's head and jaw. Doc. 55 ¶ 6. After Medbourn released Petersen, Petersen spoke normally to law enforcement and stated that he was okay when asked by an officer. Doc. 49 ¶ 15. Petersen was led back to his cell, walking under his own power. Id. ¶ 16.

**B. Summary Judgment Standard**

Summary judgment is appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party can meet this burden by presenting evidence that there is no dispute of material fact or by showing that the nonmoving party has not presented evidence to support an element of its case on which it bears the ultimate burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). To avoid summary judgment, "[t]he nonmoving party may not rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." Mosley v. City of Northwoods, 415 F.3d 908, 910 (8th Cir. 2005) (internal quotation omitted). The underlying substantive law identifies which facts are "material" for purposes of a motion for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). To oppose a properly supported motion for summary judgment, Petersen cannot rely on "[m]ere allegations [that are] unsupported by specific facts or evidence beyond [his] own conclusions." Eggers v. Wells Fargo Bank, 899 F.3d 629, 632–33 (8th Cir. 2018) (quotation omitted).

**C. Legal Analysis**

Petersen alleges that Medbourn used excessive force to restrain his head during a blood draw in violation of Petersen's rights under the Fourth and Fourteenth Amendments. Doc. 1 at 4,

6; Doc. 5 at 6–8. Medbourn contends that he is entitled to qualified immunity. Doc. 14 ¶ 12; Doc. 50 at 1, 11.

### 1. Qualified Immunity

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Mullenix v. Luna, 577 U.S. 7, 11 (2015) (per curiam) (quoting Pearson v. Callahan, 555 U.S. 223, 231 (2009)). Put differently, qualified immunity "protects 'all but the plainly incompetent or those who knowingly violate the law.'" Ashcroft v. al-Kidd, 563 U.S. 731, 743 (2011) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)). Its protection applies "regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." Pearson, 555 U.S. at 231 (citation modified).

When the defense of qualified immunity is invoked "[o]n summary judgment, a defendant official is entitled to qualified immunity unless (1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation." Walton v. Dawson, 752 F.3d 1109, 1116 (8th Cir. 2014) (citation modified). Under this two-pronged inquiry, "courts have discretion to decide which of the two prongs of qualified-immunity analysis to tackle first." Ashcroft, 563 U.S. at 735. A district court may find for the defendant on either prong, but it "may not deny qualified immunity without answering both questions in the plaintiff's favor." See Watson v. Boyd, 2 F.4th 1106, 1112 (8th Cir. 2021) (quoting Walton, 752 F.3d at 1116).

For the second prong, a right is clearly established if it is "sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right." Reichle v. Howards, 566 U.S. 658, 664 (2012) (alteration in original) (cleaned up) (quoting Ashcroft, 563 U.S. at 741). The "burden to demonstrate that the law is clearly established[]" is on the plaintiff. Morgan v. Robinson, 920 F.3d 521, 524 (8th Cir. 2019) (en banc) (citation omitted). "[T]he longstanding principle" is that "'clearly established law' should not be defined 'at a high level of generality.'" Id. at 523 (first alteration in original) (quoting White v. Pauly, 580 U.S. 73, 79 (2017)). Rather, "the clearly established law must be 'particularized' to the facts of the case." White, 580 U.S. at 79 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). "There need not be a case 'directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.'" Morgan, 920 F.3d at 524 (quoting Ashcroft, 563 U.S. at 741).

### 2. Standard for Determining Whether a Law Enforcement Officer's Use of Force is Excessive

Although Petersen alleges that his Fourth Amendment rights were violated, the United States Court of Appeals for the Eighth Circuit has instructed that a pre-trial detainee's excessive force claim should be analyzed under the Fourteenth Amendment instead of the Fourth Amendment. See Cartia v. Beeman, 122 F.4th 1036, 1040 (8th Cir. 2024) ("[P]retrial detainees must sue under the Fourteenth Amendment, not the Fourth Amendment."); Webster v. Saint Louis Cnty., 135 F.4th 614, 616 (8th Cir. 2025) ("The Due Process Clause of the Fourteenth Amendment constrains the use of force against a pretrial detainee." (citation omitted)); see also Stork v. SD State Prison, No. 4:23-CV-04128-RAL, 2024 WL 2356759, at *7 n.4 (D.S.D. May 23, 2024) ("Excessive force claims by pretrial detainees are brought under the Fourteenth Amendment." (citation omitted)).

"[A] pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable[]" to demonstrate a violation of his due process rights under the Fourteenth Amendment. Kingsley v. Hendrickson, 576 U.S. 389, 396–97 (2015). But this standard cannot be applied mechanically; "objective reasonableness turns on the facts and circumstances of each particular case." Id. at 397 (internal quotation omitted). A court must determine whether an officer used "excessive" force "from the perspective of a reasonable officer on the scene, including what the officer know at the time, not with the 20/20 vision of hindsight." Id. The Supreme Court of the United States has instructed that at the summary judgment stage, the reasonableness of an officer's actions under the Fourth Amendment "is a pure of question of law." Scott v. Harris, 550 U.S. 372, 381 n.8 (2007). Although Medbourn's summary judgment motion requires that this Court consider the reasonableness of his actions under the Fourteenth Amendment, it necessarily follows, based on precedent from the Supreme Court and the Eighth Circuit that this is a "question of law" for the Court.

The Supreme Court has identified illustrative, but non-exclusive, considerations to guide courts when considering whether a law enforcement officer's use of force is excessive:

> [T]he relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

Kingsley, 576 U.S. at 397.

### 3. Officer's Medbourn's Use of Force was Objectively Reasonable

Other courts have held that the use of force is permissible when an individual resists or refuses a blood draw authorized by a search warrant. For example, in Wood v. Bexar County, 147 F.4th 534, 550 (5th Cir. 2025), the Fifth Circuit relied on video evidence and held that

officers had not used excessive force under the Fourteenth Amendment to execute a warrant to obtain a blood sample from a pretrial detainee. The court explained:

> For her blood extraction allegations, we rely on the video evidence. The county officials had a warrant to draw [the plaintiff's] blood. Because [the plaintiff] refused to voluntarily comply with the warrant, the officers had to restrain her. And because she actively resisted their attempts to restrain her, they had to exercise some force. But the video shows that they did not use greater force than necessary.

Id.; see also Carter v. Huterson, 831 F.3d 1104, 1109 (8th Cir. 2016) ("The use of force is not excessive where it involves only the level of physical coercion necessary to execute an otherwise lawful seizure."); United States v. Bailey, No. 23-498-KSM, 2024 WL 4906483, at *5 (E.D. Pa. Nov. 27, 2024) (citing cases "demonstrat[ing] that officers can use reasonable force to overcome a [detainee's] resistance to a lawful search warrant" in the context of a motion to suppress evidence in a criminal prosecution).

Here, the video evidence also demonstrates that Medbourn's use of force during the blood draw was objectively reasonable. It is undisputed that Petersen repeatedly refused to permit his blood to be withdrawn voluntarily. Doc. 49 ¶ 5; Doc. 52-1; Doc. 53-1; Doc. 54-1; Doc. 54 ¶ 5. To avoid the blood draw, Petersen barricaded himself in his cell, and when officers were able to access his cell, Petersen refused to place his hands behind his back voluntarily so that he could be handcuffed and taken to the booking area for the blood draw. Doc. 49 ¶¶ 6, 7; Doc. 54-2. After arriving in the booking area, Petersen voluntarily sat down in the restraint chair, but he began threatening the blood draw technician as officers placed his legs and arms in restraints. Doc. 49 ¶¶ 8, 9. The technician placed a tourniquet on Petersen's arm and cleaned the skin near where she planned to draw blood while the verbal threats continued. Docs. 52-2; 54-2; 55-1. As the technician approached Petersen with a needle and syringe, he lunged at her with his head and upper body and attempted to bite her. Doc. 49 ¶ 10; Docs. 52-2, 53-1, 53-2, 54-2, 55-1.

The technician stepped back, and officers applied additional restraints to Petersen's shoulders. Docs. 52-2, 53-1, 53-2, 54-2, 55-1. The restraints restricted Petersen's movements, but he was not immobilized. Docs. 52-2, 53-1, 53-2, 54-2, 55-1. Further, his head was not restrained. Docs. 52-2, 53-1, 53-2, 54-2, 55-1. Thus, as the technician approached Petersen a second time with a needle and syringe, Medbourn restrained Petersen's head by placing a hand on Petersen's jaw area under his mouth. Docs. 52-2, 53-1, 53-2, 54-2, 55-1; Doc. 55 ¶ 5. Immediately, Petersen began thrashing violently and screaming. Doc. 49 ¶ 13; Docs. 52-2 53-1, 53-2, 54-2, 55-1. The videos demonstrate that five officers, including Medbourn, restrained Petersen so that the blood draw could be accomplished. Docs. 53-1, 53-2. The videos also demonstrate that Petersen thrashed and resisted continuously. Docs. 52-2, 53-1, 53-2, 54-2, 55-1. He also yelled almost continuously, including repeating threats directed toward the technician. Id. After the blood draw had been completed and the technician had placed a bandage on Petersen's arm, the technician stepped away from Petersen. Id. Medbourn, as well as the other four officers who had been restraining Petersen, stopped holding Petersen. Id.

In his complaint, which is verified, Petersen asserts that after he was already strapped to a chair in the booking area, "Medbourn place A move on [his] head and neck would not allow [him] to breath[e]." Doc. 1 at 6. In his response to Medbourn's motion for summary judgment, Petersen alleges that the videos show Medbourn's hand on his "jaw and neck." Doc. 57 at 1; see also Doc. 71 at 2 (asserting that the videos "clearly show Hunter Medbourn with his hand around [Petersen's] neck and mouth area"); Doc. 72 at 2 (alleging that "Medbourn placed his hand on [Petersen's] Jaw, mouth, and neck, at times [Medbourn] would apply so much pressure on [Petersen's] Jaw and neck that [he] could not breath[e]"). The Court has reviewed all the videos, and none of the videos demonstrate that Medbourn's hand was on Petersen's neck. Instead, the

videos demonstrate that Medbourn's hand was on Petersen's chin and jaw below Petersen's mouth. Docs. 52-2, 53-1, 53-2, 54-2, 55-1. At times, Petersen yelled that he could not breathe, but Medbourn responded that he was able to talk so he was able to breathe. Docs. 52-2, 53-1, 53-2, 54-2, 55-1. Additionally, some of the videos depict the rise and fall of Petersen's chest as he is breathing, and at times, the audio picks up Petersen's breath sounds. See, e.g., Docs. 54-2, 55-1. During the time that he was restrained and immediately after the officers released their holds, Petersen was breathing heavily, but he had been thrashing violently and vigorously resisting the officers' efforts to retrain him. Docs. 52-2, 53-1, 53-2, 54-2, 55-1.

In his response, Petersen contends that Medbourn began restraining his "neck and jaw before the struggle began." Doc. 57 at 1. As the Court previously stated, none of the videos depict Medbourn's hand on or around Petersen's neck. Further, it was objectively reasonable for Medbourn to restrain Petersen's head when he did. After repeatedly threatening the technician, when the technician initially approached Petersen with a needle and syringe, Petersen lunged at her with his head and upper body and attempted to bite her. Doc. 49 ¶ 10; Docs. 52-2, 53-1, 53-2, 54-2, 55-1. Although the officers applied additional restraints to Petersen's shoulders, his head remained unrestrained, and none of the restraints fully immobilized Petersen's limbs or restricted him from struggling and resisting when the technician approached a second time to initiate the blood draw. Docs. 52-2, 53-1, 53-2, 54-2, 55-1. A reasonable officer in similar circumstances would not give Petersen a second chance to lunge at the technician and attempt to bite her.

Finally, in the complaint, Petersen alleges that Medbourn did not release his grip and he was not able to breathe until a jailer stated to Medbourn "[b]e careful with that!!" Doc. 1 at 6.[3]

[3] When the Court reviewed the video evidence, the Court did not hear a statement like this.

"[T]he facts alleged in a verified complaint need not be repeated in a responsive affidavit in order to survive a summary judgment motion." Roberson v. Hayti Police Dep't, 241 F.3d 992, 995 (8th Cir. 2001). But this Court need not accept as true each and every sentence in Petersen's verified complaint. "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify to the matters stated." Fed. R. Civ. P. 56(c)(4). Petersen's statement recounting a jailer's alleged hearsay statement is insufficient as a matter of law to raise a genuine issue of material fact. Nooner v. Norris, 594 F.3d 592, 603 (8th Cir. 2010) (recognizing that hearsay cannot be relied upon to counter a motion for summary judgment). Similarly, this Court need not accept as true Petersen's allegations recounting his resistance and the officers' efforts to overcome that resistance if Petersen's allegations cannot be reconciled with the video evidence. See Scott, 550 U.S. at 378–79 ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of facts for purposes of ruling on a motion for summary judgment."). In this case, all the videos demonstrate that Medbourn, as well as the four other officers restraining Petersen, released Petersen immediately when the technician had completed the blood draw and stepped away from the restraint chair. Docs. 52-2, 53-1, 53-2, 54-2, 55-1.

Based on the undisputed facts, this Court's review of the video evidence, and consideration of the factors identified by the Supreme Court in Kingsley, Medbourn's use of force to retrain Petersen's head was objectively reasonable and necessary to overcome his resistance to the blood draw.[4] Accordingly, Medbourn is entitled to qualified immunity.

---

[4] Petersen asserts that Medbourn "needed to control [Petersen] by the top of his head above his ears." Doc. 57 at 1. But Petersen does not cite any authority providing that it is objectively unreasonable for an officer attempting to

### 4. Petersen Is Not Entitled to Recover Compensatory Damages

Petersen alleges that Medbourn's restraint during the blood draw caused him "emotional and psychological trama [sic]." Doc. 1 at 6. In his complaint, Petersen seeks millions of dollars as damages for relief. Id. at 7.

The Prison Litigation Reform Act (PLRA) mandates that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18)." 42 U.S.C. § 1997e(e). The Eighth Circuit interprets § 1997e(e) "as limiting recovery for mental or emotional injury in all federal actions brought by prisoners." McAdoo v. Martin, 899 F.3d 521, 525 (8th Cir. 2018) (quoting Royal v. Kautzky, 375 F.3d 720, 723 (8th Cir. 2004)). Because Petersen alleges only emotional and psychological trauma and has not alleged a separate physical injury, § 1997e(e) precludes him from recovering compensatory damages.[5]

### 5. Petersen's Response to Medbourn's Motion for Summary Judgment

In addition to his initial response to Medbourn's motion for summary judgment, Doc. 57, and his surreply, Doc. 59, Petersen filed a "Statement of Material Facts," Doc. 71 (capitalization in original omitted). See also Doc. 76 ("Summary Judgment Page Two Material Facts" (capitalization in original omitted)). Petersen also submitted a document entitled "Motion for Summary Judgment and Proceedings Thereon." Doc. 72 (capitalization in original omitted). In

---

restrain a violent, uncooperative pre-trial detainee by placing a hand on the detainee's chin and jaw area instead of the top of the detainee's head. For the reasons already outlined by the Court, given the facts and circumstances of this case, Medbourn's restraint of Petersen's head was objectively reasonable because it was necessary to facilitate the execution of the warrant for a blood draw.

[5] The Eighth Circuit has recognized that "Congress did not intend section 1997e(e) to bar recovery for all forms of relief[]" and held that § 1997e(e) does not preclude claims for nominal or punitive damages or injunctive and declaratory relief. Royal, 375 F.3d at 723. Petersen's claims for injunctive relief did not survive screening, see Doc. 5 at 5–6, and he does not seek nominal or punitive damages or declaratory relief, see Doc. 1 at 7.

the caption of Docket 72, Petersen references SDCL § 15-6-6(a), which is the South Dakota rule of civil procedure corresponding to Federal Rule of Civil Procedure 6. Thus, this Court liberally construes Petersen's reference to the state equivalent of Rule 6 to be a request for leave to submit additional out-of-time responses[6] to Medbourn's motion for summary judgment. Because Medbourn did not object to or move to strike Petersen's additional untimely responses, the Court will consider the arguments in Petersen's additional responses. However, because Petersen did not cite to any record evidence and because his responses are not signed under penalty of perjury, Petersen's unsupported factual allegations will not be considered. See Turner v. Mull, 784 F.3d 485, 489 (8th Cir. 2015) ("[The non-moving party] may not merely point to unsupported self-serving allegations, but must substantiate allegations with sufficient probative evidence that would permit a finding in [his] favor." (quotation omitted) (second alteration in original)); see also Phox v. 21C Mgmt. LLC, No. 20-CV-00846-SRB, 2022 WL 345654, at *5 n.8 (W.D. Mo. Feb. 4, 2022) (recognizing that unsupported allegations cannot be relied on to defeat summary judgment).

**a. Validity of the Search Warrant**

Petersen alleges that the search warrant authorizing the blood draw was not valid because the time of execution was crossed out and rewritten. Doc. 59 at 1; Doc. 71 at 2; Doc. 72 at 2. The issuing officer submitted an affidavit explaining the strike through following her signature and confirming that the warrant was signed at 10:45 a.m. Doc. 51 ¶ 7. The body camera video footage that is part of the record demonstrates that Petersen's blood was drawn at approximately 11:35 a.m. on the day that the warrant was issued. Doc. 51-2; Doc. 52-2; Doc. 54-2; Doc. 55-1. In the body camera video footage, Petersen asserted that the warrant was not valid because it was

[6] Petersen's response to Medbourn's motion for summary judgment was due on March 17, 2026. D.S.D. Civ. LR 7.1(B).

not signed by a judge. See generally Doc. 52-2; Doc. 54-2. It is undisputed that Bosse is a duly-appointed clerk magistrate under SDCL § 16-12C-1, Doc. 51 ¶ 2, and authorized to issue a search warrant. See SDCL § 16-12C-7 ("A magistrate court with a clerk magistrate presiding has concurrent jurisdiction with the circuit courts to issue summonses, warrants of arrest, and warrants for searches and seizures."). This Court rejects Petersen's argument that the search warrant was not valid.

**b. Medbourn Rubbing His Hands Together**

According to Petersen's response to Medbourn's motion for summary judgment, at least some of the body camera footage shows Medbourn "smiling and rubbing his hands together with joy before he violated" Petersen's rights. Doc. 57 at 1. Initially, when Medbourn entered the booking area of the jail where the blood draw took place, Medbourn smiled and rubbed his hands together. Doc. 52-1. But Petersen was not present when Medbourn entered this area. Id. In fact, there was only a folding chair in front of the cabinet on which the supplies for the blood draw were laid out. Id. The restraint chair was not in the area. Id. Further Petersen does not acknowledge that after Medbourn entered the booking area and before Medbourn placed his hand on Petersen's jaw to assist in restraining him during the blood draw, Petersen barricaded himself in his cell and after officers were able to enter his cell, physically resisted when officers attempted to place him in handcuffs to transport him to the blood draw area. Doc. 49 ¶¶ 6, 7. After arriving in the booking area and being placed in the restraint chair, Petersen threatened the blood draw technician repeatedly and attempted to lunge at her and bite her when she approached him with a needle and syringe. Doc. 49 ¶¶ 9, 10, 11; Docs. 52-2, 54-2, 55-1. Only after these events did Medbourn hold Petersen's jaw to restrain his head when the blood draw

technician again approached Petersen to begin drawing blood. Doc. 55 ¶ 5. As the Court has previously explained, Medbourn's actions were objectively reasonable.

The Court disagrees that there is any question of fact regarding Medbourn's subjective intent at the time of the conduct in issue, but even if there were, Medbourn's subjective intent is not a material issue of fact. Get Away Club, Inc. v. Coleman, 969 F.2d 664, 666 (8th Cir. 1992) (noting that the "mere existence of some alleged factual dispute" is not sufficient by itself to overcome summary judgment; only disputes that are outcome determinative under the applicable law will defeat summary judgment). The Supreme Court has instructed that courts must use an objective standard when assessing whether the use of force is excessive under the Fourteenth Amendment. Kingsley, 576 U.S. at 399; see also Graham v. Connor, 490 U.S. 386, 397 (1989) ("An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively reasonable use of force constitutional.").

**c. Petersen's Witness**

Petersen contends that he has a witness, Dave Styles, who will testify by subpoena only. Doc. 71 at 2; see also Doc. 73 at 1 (alleging that Styles "was up close and saw Hunter Medbourn in fact violate [his] airway by blocking circulation of blood to his head and also saw Hunter Medbourn's huge hand block his airway."). Petersen's time to present testimony or an affidavit from any witness, including Styles, has expired. Rule 56(d) provides that when a nonmovant shows by affidavit or declaration and for specified reasons that he is unable to present facts essential to justify opposition to a motion for summary judgment, the Court may "(1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). "[A] Rule 56(d)

declaration must comply with [28 U.S.C.] § 1746, including the requirements that the affidavit or declaration (1) be sworn under penalty of perjury, and (2) declare that its contents are true and correct." Kuehne v. Citimortgage, Inc., No. 4:10 CV 1902 DDN, 2012 WL 1205754, at *5 (E.D. Mo. Apr. 11, 2012) (citing CareToLive v. Food & Drug Admin., 631 F.3d 336, 344–45 (6th Cir. 2011)). Petersen has not submitted an affidavit or declaration under penalty of perjury, so he has not met the Rule 56(d) standard to forestall a decision on the summary judgment motion. Further, as this Court has previously stated, Petersen has not identified any reason that he could have secured Styles' testimony or an affidavit prior to the expiration of the discovery deadline and prior to the expiration of his time to respond to Medbourn's motion for summary judgment.

Accordingly, Medbourn is entitled to qualified immunity, and his motion for summary judgment, Doc. 48, is granted.

## III. Conclusion

For the reasons discussed above, it is

ORDERED that Petersen's motion to reopen discovery, Doc. 73, is denied. It is further

ORDERED that Petersen's motion requesting that the Court accept all previous motions, Doc. 74, is denied. It is finally

ORDERED that Medbourn's motion for summary judgment, Doc. 48, is granted.

DATED this 29th day of September, 2026.

BY THE COURT:

ERIC C. SCHULTE
UNITED STATES DISTRICT JUDGE